UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JENNIFER ANDREWS,

       Plaintiff,

  v.

NASCAR ENTERPRISES LLC,
MICHIGAN INTERNATIONAL
SPEEDWAY LLC, and JERRY
POLLARD,

       Defendants.                      JURY TRIAL DEMANDED

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

# COMPLAINT

Plaintiff Jennifer Andrews alleges the following for her complaint against Defendants NASCAR Enterprises LLC, Michigan International Speedway LLC, and Jerry Pollard.

## NATURE OF THE CASE

1. This is an employment case involving sexual harassment.

2. Plaintiff Jennifer Andrews worked for Defendants Michigan Interna-

tional Speedway LLC (MIS) and NASCAR Enterprises LLC where her direct supervisor and manager, Defendant Jerry Pollard, pressured and coerced Andrews into flirting with him and exchanging sexualized pictures with him.

3. If Andrews did not flirt with Pollard, then he punished her with worse job assignments, acted hostile toward her and treated her poorly, and threatened her job security. However, Pollard's attitude toward Andrews improved dramatically when she showed him even the slightest interest. He promised her better shifts, better hours, and a promotion to a better job.

4. Accordingly, Andrews eventually relented and acquiesced to Pollard's advances where she flirted with him and then exchanged sexualized pictures with him.

5. Andrews, however, later decided to stop flirting with Pollard and refused to exchange sexualized pictures with him. She could not tolerate it any more.

6. Pollard fired Andrews the next day.

7. Defendants' conduct violates Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larsen Civil Rights Act, and gives rise to a cause of action under Michigan's common law.

8. Andrews suffered damages as a result of Defendants' statutory violations and their wrongful conduct that include, but are not limited to, back wages,

frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

9. Plaintiff Jennifer Andrews is an individual person who resides in Fulton County, Ohio.

10. Defendant NASCAR Enterprises is a limited liability company organized under the laws of the State of Delaware. The company owns an automobile racetrack facility located in Jackson County, Michigan.

11. Defendant Michigan International Speedway is a limited liability company organized under the laws of the State of Michigan. The company operates an automobile racetrack facility located in Jackson County, Michigan.

12. Defendant Jerry Pollard is an individual person that NASCAR and MIS employed as a manager at its racing facility. Pollard resides in Jackson County, Michigan.

13. The Court has personal jurisdiction over Defendants under Michigan Compiled Laws Sections 600.701, 600.705, 600.711, and 600.715. FED. R. CIV. P. 4(k)(1)(A).

14. The Court has original subject matter jurisdiction over the claims asserted in the complaint under Title VII of the Civil Rights Act of 1964 in accordance with Title 28 of the United States Code, Section 1331, because those claims

arise under federal law. Title VII also independently provides for subject matter jurisdiction in the federal courts. 42 U.S.C. § 2000e–5(f)(3).

15. The Court has supplemental jurisdiction over the state law claims asserted in the complaint in accordance with Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

16. Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

17. Andrews worked for Defendants NASCAR and MIS as a security guard and guest services employee from January 30, 2024 until March 5, 2024 at the Michigan International Speedway.

18. Defendant Jerry Pollard directly supervised and managed Andrews' employment.

19. Shortly into Andrews' tenure of employment with Defendants, Pollard developed a sexual interest in Andrews and he began to flirt with her.

20. Andrews initially resisted Pollard's flirtations and his sexual advances. But when she did, Pollard punished Andrews and treated her poorly and worse than other employees.

21. For example, Pollard would assign Andrews to work in locations seg-

regated from other employees, he would speak angrily toward Andrews, act in a hostile demeanor toward her, speak negatively about her and gossip behind her back, and nitpick her work and otherwise single her out for criticism and ridicule. Pollard would also threaten Andrews' job security and suggest that she would be fired when she did not flirt with him.

22. Andrews saw Pollard do the same or similar things to other female employees of Defendants that refused to flirt with him or who were otherwise dismissive of his sexual advances.

23. Andrews eventually relented and acquiesced to Pollard's flirtations where she would flirt with him back. And, when she did, Pollard treated Andrews much better. He promised Andrews work on a better shift, promised her more work hours, and promised that he would promote her into a supervisor position.

24. Pollard then increased and ramped up his efforts and sexual advances toward Andrews where he pressured and coerced Andrews into sending him sexualized pictures of herself (sometimes called "sexting").

25. Andrews felt as though she had no choice but to send Pollard (her boss) the sexualized pictures of herself. She knew that Pollard would treat her poorly and that he would fire her if she refused.

26. Pollard, for his part, coerced, encouraged, and participated in the sexting and he also sent Andrews sexualized pictures of himself.

27. Andrews did not want to participate in the sexting with her boss, but she felt like she had no other choice and had to participate or she would lose her job.

28. Eventually, Andrews could not tolerate Pollard's demands for sexting any further.

29. Andrews told Pollard that she would no longer participate in the sexting and decided to "unfriend" him on the social media platform, Facebook.

30. Andrews also refused to attend a private meeting outside of work hours that Pollard had arranged for Andrews and himself where Pollard claimed he needed to review Andrews' tax forms (about which he has no expertise), and which was an obvious ruse that Pollard had concocted to create as an opportunity for himself to further prey upon Andrews.

31. The next day after Andrews told Pollard that she would not engage in sexting with him anymore, unfriended him on Facebook, and refused to attend Pollards' private "tax form" meeting, Pollard promptly fired Andrews.

32. Andrews filed a charge of discrimination and has otherwise satisfied all administrative prerequisites to filing her causes of action.

## COUNT 1
### SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(*against NASCAR and MIS*)

33. Andrews repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against NASCAR and MIS.

34. Andrews was subjected to communications and conduct based on her sex and gender.

35. The communications and conduct were hostile and unwelcome.

36. Andrews was subjected to a hostile work environment and otherwise treated differently than other employees because of her sex and gender.

37. Pollard used his authority over Andrews as her boss to coerce her into sharing sexualized photos and information with him in exchange for better treatment at work, and the promise of better shifts, more hours, and a supervisor position.

38. Defendants were legally responsible for the work environment that was hostile and discriminatory toward Andrews because of her sex and gender.

39. The hostile and discriminatory work environment Andrews endured was so severe and pervasive so as to alter the terms and conditions of her employment by creating a hostile and abusive working environment.

40. The work environment was also sexually transactional where Pollard

used his position of power and authority to condition certain terms and conditions of employment and to threaten job loss based on the acceptance of his sexual advances.

41. Defendants knew about the conduct Andrews was subjected to, actively encouraged and created it (through Pollard's actions), and failed to implement reasonably prompt and appropriate corrective actions to end the harassment.

42. Andrews suffered damages as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

### COUNT 2
### DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
(*against NASCAR and MIS*)

43. Andrews repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against NASCAR and MIS.

44. Defendants subjected Andrews to different terms and conditions of employment in comparison to male employees.

45. Defendants discharged and terminated Andrews' employment.

46. Andrews' sex and gender were motivating factors in Defendants' decision to treat her differently in connection with the terms and conditions of her em-

ployment and in connection with her discharge.

47. Andrews suffered damages as a result of Defendants' violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 3
### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
*(against NASCAR and MIS)*

48. Andrews repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against NASCAR and MIS.

49. Andrews engaged in activity protected by Title VII of the Civil Rights Act of 1964 when she opposed the unlawful, abusive, and inappropriate conduct that she encountered in Defendants' workplace.

50. Defendants knew about Andrews' protected activity.

51. Defendants took an adverse employment action against Andrews when it terminated her employment.

52. Defendants would not have terminated Andrews' employment but for her protected activity.

53. Andrews suffered damages because of Defendants' retaliation that include, but are not limited to, lost wages and benefits, emotional distress, attorney's

fees, and litigation costs.

## COUNT 4
### SEXUAL HARASSMENT IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
(*against NASCAR, MIS, and Pollard*)

54. Andrews repeats and incorporates all the previous allegations in her complaint.  This count in the complaint proceeds against NASCAR, MIS, and Pollard.

55. Andrews was subjected to communications and conduct based on her sex and gender.

56. The communications and conduct were hostile and unwelcome.

57. Andrews was subjected to a hostile work environment and otherwise treated differently than other employees because of her sex and gender.

58. Pollard used his authority over Andrews as her boss to coerce her into sharing sexualized photos and information with him in exchange for better treatment at work, and the promise of better shifts, more hours, and a supervisor position.

59. Defendants were legally responsible for the work environment that was hostile and discriminatory toward Andrews because of her sex and gender.

60. The hostile and discriminatory work environment Andrews endured was so severe and pervasive so as to alter the terms and conditions of her employ-

ment by creating a hostile and abusive working environment.

61. The work environment was also sexually transactional where Pollard used his position of power and authority to condition certain terms and conditions of employment and to threaten job loss based on the acceptance of his sexual advances.

62. Defendants knew about the conduct Andrews was subjected to, actively encouraged and created it (through Pollard's actions), and failed to implement reasonably prompt and appropriate corrective actions to end the harassment.

63. Andrews suffered damages as a result of Defendants' violations of Michigan's Elliot-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 5
### DISCRIMINATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
(*against NASCAR, MIS, and Pollard*)

64. Andrews repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against NASCAR, MIS, and Pollard.

65. Defendants subjected Andrews to different terms and conditions of employment in comparison to male employees.

66. Defendants discharged and terminated Andrews' employment.

67. Andrews' gender and sex were one of the motives or reasons which made a difference in Defendants' decision to treat her differently in connection with the terms and conditions of her employment and in connection with her discharge.

68. Andrews suffered damages as a result of Defendants' violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 6
### RETALIATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
(*against NASCAR, MIS, and Pollard*)

69. Andrews repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against NASCAR, MIS, and Pollard.

70. Andrews engaged in activity protected by the Elliott-Larsen Civil Rights Act when she opposed the unlawful, abusive, and inappropriate conduct that she encountered in Defendants' workplace.

71. Defendants knew about Andrews' protected activity.

72. Defendants took an adverse employment action against Andrews

when they terminated her employment.

73. There was a causal connection between Andrews' protected activities and the termination of her employment.

74. Andrews suffered damages because of Defendants' retaliation that include, but are not limited to, lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

## COUNT 7
### NEGLIGENT RETENTION OF EMPLOYMENT
*(against NASCAR and MIS)*

75. Andrews repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against NASCAR and MIS.

76. Defendants owed Andrews a duty of reasonable care to maintain a safe working environment.

77. Defendants breached that duty by retaining Pollard's employment after it knew that he had a propensity and likelihood to sexually harass, abuse, and injure women in Defendants' workplace, such as Andrews.

78. Defendants knew that Pollard had previously engaged in sexual harassment and that he had previously abused other female employees at Defendants' workplace before having done so to Andrews.

79. Pollard caused harm and injuries to Andrews at Defendants' workplace.

- 14 -

80. Defendants' negligence was the direct and proximate cause of Andrews' injuries.

81. Andrews suffered damages because of Defendants' negligence in retaining Pollard's employment that include, but are not limited to, pain and suffering, emotional distress, attorney's fees, and litigation costs.

## JURY DEMAND

82. Andrews demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

## RELIEF REQUESTED

83. Plaintiff Jennifer Andrews requests that the Court enter a judgment in her favor and against Defendants NASCAR Enterprises LLC, Michigan International Speedway LLC, and Jerry Pollard in an amount that will fully and fairly compensate her for all of her damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

84. Andrews also requests that the court grant her any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

- 15 -

JENNIFER ANDREWS

Dated: April 23, 2025        By: /s/ Mark S. Wilkinson

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com